# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
TOBIN DANA JACOBROWN,                    )
                                        )
                    Plaintiff,           )
                                        )        Case No. 1:09-cv-01420 (RMU)
        v.                               )
                                        )
                                        )
LAWRENCE G. ROMO,                        )
UNITED STATES OF AMERICA,                )
                                        )
                    Defendants.          )
_____)

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

TONY WEST
Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director
Civil Division

Bryan R. Diederich
(MA BBO # 647632, NY Reg. # 4216164)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Room 7109
Washington, D.C. 20530
Tel:  (202) 305-0198
Fax:  (202) 616-8470
E-mail:  bryan.diederich@usdoj.gov

Attorneys for Defendants

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Jacobrown Fails to Establish Standing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Selective Service Already Provides a Way to Make a Record of Claims to
Conscientious Objector Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Jacobrown Fails to State an Injury Sufficient to Support Jurisdiction  . . . . . . . . 4

        1.    Jacobrown Has Not Shown a Reasonable Threat of Prosecution. . . . . . . 5

        2.    Jacobrowns's Allegations that He Might Return to College and Seek
Financial Aid are Insufficient to Confer Standing . . . . . . . . . . . . . . . . . . 6

        3.    Jacobrown's Allegations that He Suffers an Emotional Injury are
Insufficient to Confer Standing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        4.    Jacobrown Cannot Establish Standing By Seeking a Declaratory
Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.   Jacobrown Fails to State a Claim Upon Which Relief Can be Granted  . . . . . . . . . . . . . 9

    A.    Jacobrown Fails to Allege a Substantial Burden as Required Under RFRA . . . . 10

        1.    Jacobrown Fails to Allege How Registration Violates his Religious
Beliefs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    Jacobrown Fails to Demonstrate that the Government has Exerted
Substantial Pressure on him to Act Contrary to His Beliefs  . . . . . . . . . 12

B.    Jacobrown Cannot Overcome the Government's Compelling Interest in a
      Uniform Selective Service Registration System . . . . . . . . . . . . . . . . . . . . . . . . . 13

      1.    The Court Should Defer to Congress's Judgment with Respect to the
            Method of Accommodation Chosen in the Military Selective Service Act.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      2.    The Current Limitations on the Registration Requirement Do Not
            Undermine Congress' Purpose in Establishing the Registration
            Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      3.    The Potential For Perceived Unfairness is Sufficient to Justify Congress's
            Decision in this Instance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      4.    Providing Jacobrown with a Registration Exemption Undermines the
            Registration System. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>TABLE OF AUTHORITIES</u>

CASES

*Acosta Orellana v. Croplife International*, No. 08-1790, 2010 WL 1931689 (D.D.C. May 13, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*\*Adams v. CIR*, 170 F.3d 173 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Allen v. Wright*, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Aribraje Casa de Cambio, S.A. De C.V. v. United States Postal Serv.*, 297 F. Supp. 2d 165 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*\*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9,10, 11

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Boardley v. U.S. Department of the Interior*, 605 F. Supp. 2d 8 (D.D.C. 2009) . . . . . . . . . . . 12

*Bowen v. Roy*, 476 U.S. 693 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Coleman v. Pension Benefit Guaranty Corp.*, 94 F. Supp. 2d 13 (D.D.C. 2000) . . . . . . . . . . . 4

*Elgin v. United States*, 594 F. Supp. 2d 133 (D. Mass. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Employment Division v. Smith*, 494 U.S. 872 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*\*Fair Employment Council v. BMC Marketing Corp.*, 28 F.3d 1268 (D.C. Cir. 1994) . . . . . . . 8

*Gillette v. United States*, 401 U.S. 437 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418 (2006) . . . . . . . 15

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*\*Humane Society of the U.S. v. Babbitt*, 46 F.3d 93 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . 7

*Johnson v. Williams*, No. 06-01453, 2009 WL 302180 (D.D.C. Feb. 6, 2009) . . . . . . . . . . . . 9

*Kaemmerling v. Lappin*, 553 F.3d 669 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Larsen v. U.S. Navy*, 525 F.3d 1 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Mahoney v. District of Columbia*, 662 F. Supp. 2d 74 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . 12

*Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rostker v. Goldberg*, 453 U.S. 57 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sample v. Lappin*, 479 F. Supp. 2d 120 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*\*Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thomas v. Review Board of the Ind. Empl. Sec. Division*, 450 U.S. 707 (1981) . . . . . . . . . . . 13

*Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Tooley v. Napolitano*, No. 07-5080 (D.C. Cir. July 1, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) . . . . . . . . . . . . . . . 3

*United States v. O'Brien*, 391 U.S. 367 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Schmucker*, 815 F.2d 413 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Weathers*, 186 F.3d 948 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Warth v. Seldin*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

### STATUTES

Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-2000bb-4 ("RFRA") . . . . . . . . . . . 1

50 U.S.C. app. § 451(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

50 U.S.C. app. § 453(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

50 U.S.C. app. § 456(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

50 U.S.C. app. § 456(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

RULES & REGULATIONS

34 C.F.R. § 668.37(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

65 Fed. Reg. 57215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4

Federal Rule of Civil Procedure 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

<u>INTRODUCTION</u>

Tobin Jacobrown's claim for relief under the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-2000bb-4 ("RFRA") should be dismissed with prejudice, not because of any presumptions about Jacobrown's beliefs, but because the plain text of the Complaint makes clear that he has not been injured in the way he claims and is not entitled to the relief he seeks. Though he never once mentions the relevant paragraphs in his Opposition to the Government's Motion to Dismiss (hereinafter "Opp'n"), Jacobrown cannot escape the import of what he has already told the Court:  he "would register with the Selective Service System if the Selective Service System would maintain a record of his claim to conscientious objector status in connection with his registration for the draft."  Compl. ¶ 17.  Taking that statement at face value, the Court must dismiss Jacobrown's claim because the Selective Service System ("Selective Service") already provides a way that Jacobrown can make a record that will be maintained by the Selective Service.  Jacobrown's Complaint reveals that he lacks standing to bring this suit, fails wholly to allege a substantial burden with respect to his religious exercise and cannot demonstrate that his alleged burden outweighs the need of the Selective Service to maintain a uniform registration system to ensure readiness in case of a national emergency.

<u>ARGUMENT</u>

**I.      Jacobrown Fails to Establish Standing**

As explained in the Defendants' opening Memorandum, standing can be evaluated on the basis of a complaint's allegations, but it is also sometimes assessed in light of a factual record. *See Halkin v. Helms*, 690 F.2d 977, 999 (D.C. Cir. 1982).  Here, there is a factual record of that

demonstrates that a fundamental assumption of Plaintiff's Complaint—that the Selective Service maintains no record of what people write on the face of their registration card—is simply wrong. In light of that fact, it is evident that Jacobrown lacks the required injury sufficient to support standing. Moreover, measured by the terms of his pleading, Jacobrown fails to allege sufficient facts to plead standing as a matter of law.

> **A.**   **The Selective Service Already Provides a Way to Make a Record of Claims to Conscientious Objector Status.**

Jacobrown bears the burden of demonstrating that he has standing to bring this suit by showing that he faces an actual or imminent injury fairly traceable to the government's action that would be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In this matter, Jacobrown lacks standing as an initial matter because his Complaint assumes a fact—that the Selective Service will not maintain a record of his claim that he is a conscientious objector—that is simply not true. Indeed, Jacobrown states in his Complaint that he "would register with the Selective Service System if the Selective Service System would maintain *a record* of his claim to conscientious objector status in connection with his registration for the draft." Compl. ¶ 17 (emphasis added). As demonstrated in Defendants' Memorandum, the Selective Service would preserve a record of Jacobrown's claim if he would note it on the face of his registration card.

He now argues that this is not sufficient, claiming that "a microfiche copy of a scribble in the margin of a registration from, buried somewhere in the archives far from the Selective Service System's official registration database, is not an official record of an official claim." *See* Opp'n at 3. This argument fails for at least two reasons.

First, a registration card bearing the annotated claim that the registrant is a conscientious

objector is an official record.  The relevant dictionary meaning of the term "official" is

"authorized or issued authoritatively."  Random House Dict. of the English Language 1345 (2d

ed. 1987).  Jacobrown is "authorized" to make the annotation on his registration card—the

Selective Service told him he could.  *See* Sanchez Decl. Ex. E at 2; Mem. in Supp. of Mot. to

Dismiss at 10.  Moreover, the microfilm collection of physical registration cards is an official

system of records maintained by the Selective Service.  *See* 65 Fed. Reg. 57215, 57221-22 (Sept.

21, 2000).  Such a registration card bearing a written statement claiming that the registrant is a

conscientious objector (whether it is "scribbled" as Jacobrown claims, Opp'n at 3, or not) would

be treated as a an "agency record" for purposes of relevant federal records statutes.  *See, e.g.*,

*United States Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989) (defining "agency

records" for purposes of Freedom of Information Act).  Jacobrown offers no reason why a

handwritten annotation on a draft card is not an "official record."

Second, Jacobrown's Complaint certainly does not support the view that it is important to

him whether a record of his claim is kept in a particular database or recorded in any particular

form.  Indeed, there are no allegations in Jacobrown's Complaint about the manner and location

in which a claim could be stored, though he now claims to attach substantial religious significant

to whether information is maintained in a particular way.  *See* Opp'n at 3.  For that matter,

Jacobrown's claim that the microfilms of actual registration cards are "kept in some archive far

from the Selective Service System's registration database" is demonstrably false.  The

microfilms of draft registration cards are kept in the same facility as the registration database.

*Compare* 65 Fed. Reg. at 57216 (registrant database maintained at Data Management Center in

Great Lakes, Illinois) *with id.* at 57222 (microfilms of registration cards maintained at Data

Management Center in Great Lakes, Illinois until no longer needed for reference purposes). Jacobrown seems to acknowledge that he cannot articulate a claim that his religious exercise is burdened by such administrative details as the government's choice of filing cabinets (*see* Opp'n at 11 (quoting *Bowen*, 476 U.S. at 700)) and his Complaint is devoid of any suggestion that what prevents him from registering is the *way* in which a record of his claim is kept rather than the incorrect assumption that the government simply will not maintain such a record.  Because "[i]t is axiomatic that a complaint may not be amended by briefs in opposition to a motion to dismiss," *see Aribraje Casa de Cambio, S.A. De C.V. v. United States Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 13, 24, n. 8 (D.D.C. 2000)), the Court should hold Jacobrown to the terms of his Complaint and dismiss it.

The Court should also reject Jacobrown's argument that because he has not registered, it is evident that the Selective Service's procedures do not satisfy Plaintiff's religious needs and there is therefore a justiciable dispute between him and the government.  *See* Opp'n at 3.  The Court is not obligated to simply accept as true Jacobrown's claim that he has an injury sufficient to confer standing in this matter.  *See Ascroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (legal conclusions need not be accepted as true on motion to dismiss).  Rather, the Court is required to carefully assess the Complaint and any factual record to determine whether a Plaintiff is entitled to an adjudication of the claims he has asserted.  *See Allen v. Wright*, 468 U.S. 737, 752 (1984); *Haase v. Sessions*, 835 F.2d 902, 906-07 (D.C. Cir. 1987).  Here, the facts are demonstrably not as Jacobrown had pled them, and the Court should not assume that the fact that he has not registered shows that he has standing to bring this suit.

4

**B.      Jacobrown Fails to State an Injury Sufficient to Support Jurisdiction.**

In fact, Jacobrown cannot demonstrate standing to bring this claim because he does not allege a cognizable injury flowing from the Selective Service's registration requirement. Jacobrown asks this Court for relief despite the fact that the government has inflicted no injury or deprivation on Jacobrown.  Under these circumstances, he cannot establish standing, even if he is generally aggrieved by the proposition that the law requires him to register.

1.      Jacobrown Has Not Shown a Reasonable Threat of Prosecution.

As Jacobrown correctly recognizes (Opp'n at 4) in this Circuit a strong showing of threatened prosecution is required to support standing.  *See, e.g., Seegars v. Gonzales*, 396 F.3d 1248, 1255 (D.C. Cir. 2005);  *Navegar, Inc. v. United States*, 103 F.3d 994, 1001 (D.C. Cir. 1997).  Jacobrown's Complaint merely recognizes that failure to register can be prosecuted as a crime.  Of course, it has now been more than three years since Jacobrown first announced that he intended to not register for the draft.  *See* Sanchez Decl. Ex. A.  In response to this statement, the Selective Service, which does not have the power to actually bring a prosecution against Jacobrown, merely noted that criminal charges could be filed and that his name would be forwarded to the Department of Justice.  The fact that no action has been taken in the multiple years since Jacobrown first refused to register, and that there are no reported cases of the Department of Justice prosecuting anyone under the criminal provisions of the Selective Service Act for more than two decades are sufficient to demonstrate that Jacobrown's claim of potential criminal liability is insufficient to confer standing in this instance.  *See, e.g.*, *Seegars*, 396 F.3d at 1252 (noting that evidence that law is rarely enforced by prosecution is sufficient to prevent pre-enforcement challenge). Because Jacobrown fails to allege any specific threats of enforcement or

5

any characteristic that suggests he is likely to be singled out for enforcement, he cannot establish standing under this Circuit's law.  *See* Mem. in Supp. of Mot. to Dismiss at 12 (citing *Seegars,* 396 F.3d at 1255).[1]

2.  Jacobrown's Allegations that He Might Return to College and Seek Financial Aid are Insufficient to Confer Standing.

Nor can Jacobrown establish standing by speculating about how his applications for financial aid could be treated in the future.  Jacobrown's Complaint merely alleges that he "would be eligible" for student aid when he returns to school in Spring 2010.  He does not allege that he would apply.  Jacobrown points to language later in the Complaint alleging that the Selective Service's actions would "depriv[e] him of federal financial assistance for his college education that he *would* receive in coming semesters if he were registered," (Opp'n at 5) as implying that he is likely to apply for the aid.  But this is still insufficient to establish an injury for standing purposes in this context.

Jacobrown's argument assumes that, if he applies for financial aid in the future, the Department of Education will both deny the aid and reject any argument that it should not do so because such a decision would penalize Jacobrown's religious exercise.  Under the federal financial aid regulations, however, Jacobrown is permitted to argue to the Secretary of Education that he is not required to be registered.  *See* 34 C.F.R. § 668.37(c).  Resolution of that matter is committed to the Secretary of Education, not the Selective Service.  The mere fact that

---

[1]Jacobrown's argument (Opp'n at 4 n.1), that a different standard should apply because Jacobrown's conduct is "closely connected with the constitutional interest in free exercise of religion" is plainly inconsistent with the law.  Since the Selective Service registration requirement is a general rule of neutral application it is plainly constitutional.  *See Employment Div. v. Smith*, 494 U.S. 872, 879-80 (1990).  However Jacobrown's refusal to register is characterized with respect to RFRA, it is not activity protected by the Constitution.

Jacobrown has not yet registered has had no tangible impact with respect to federal student aid and may never have such an impact if the Secretary of Education determines that RFRA requires that he not penalize Jacobrown for his failure to register.  Because Jacobrown's standing relies upon an event that may not happen, it is unripe and should not be decided at this time.  *See Larsen v. U.S. Navy*, 525 F.3d 1, 5 (D.C. Cir. 2008).[2]

3.      Jacobrown's Allegations that He Suffers an Emotional Injury are Insufficient to Confer Standing.

Jacobrown likewise cannot rely on the claim (Opp'n at 6) that he suffers emotional distress because he faces possible criminal and civil penalties due to his refusal to register.  As noted above, there is no support for the claim that he is likely to suffer criminal prosecution or to be denied federal education benefits.  As Jacobrown himself concedes (Opp'n at 5) he cannot show that it is likely that he will suffer from being barred from civil service or government contracting jobs.  "General emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes."  *Humane Soc'y of the U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995).

Jacobrown argues that prototypical RFRA cases are all based on the emotional harm associated with a burden on one's religious beliefs (Opp'n at 7), but this argument proves too much.  The mere allegation of emotional harm is not sufficient to confer standing in the absence of allegations that show an actual burden on religious practice.  Thus, *Sample v. Lappin*, cited by Jacobrown, is inapposite.  In that case, the plaintiff was was forbidden to engage in a religiously

_____

[2]For this same reason, Plaintiff would not, on the facts alleged in his Complaint, have had standing to challenge the registration requirement when he was in school.  There is, indeed, no allegation that he has *ever* actually applied for federal financial aid.

required practice.  *See* 479 F. Supp. 2d 120 (D.D.C. 2007).  Here, Jacobrown has not been

forbidden from doing anything, and he has not been penalized for failing to register.  While he

may not like the registration requirement, until it has tangible impact on him, he does not have

standing to assert a claim.

4.    <u>Jacobrown Cannot Establish Standing By Seeking a Declaratory
Judgment.</u>

The Court should also reject Jacobrown's argument that, when seeking declaratory relief,

the mere allegation of past injury is sufficient to invoke the Court's jurisdiction.  *See* Opp'n at 7.

He suggests that because he claims in his Complaint—without alleging that he ever applied for

or was denied— that he would have obtained financial aid in the past, he has sufficiently alleged

past injury sufficient to seek a declaration that his statutory right to religious exercise was

burdened.  *See* Opp'n at 7; Compl. ¶ 24.  This argument is contrary to the law of this Circuit.

Relief, whether it is declaratory or injunctive, is only available where it will redress a plaintiff's

alleged harms.  *See Newdow v. Roberts*, 603 F.3d 1002, 1010-13 (D.C. Cir. 2010).   A

declaration would be meaningless because Jacobrown would not be awarded damages for his

alleged past injuries.

Moreover, the District of Columbia Circuit has explicitly concluded that where a plaintiff

cannot show that activity giving rise to injury in the past is likely to be repeated, he is entitled to

neither injunctive *nor declaratory* relief.  *See Fair Employment Council v. BMC Marketing

Corp.*, 28 F.3d 1268 (D.C. Cir. 1994) (". . . while Lyons could maintain a suit for damages, he

could not maintain his suit for an injunction because he 'has made no showing that he is

realistically threatened by a repetition of his experience' . . . The same rationale, we have

8

observed, would have kept him from bringing a suit for declaratory relief").[3]  Even if Jacobrown

had alleged that he had applied for and been denied federal student aid in the past, and he does

not, such an allegation would not support standing to seek declaratory relief.

## II.      Jacobrown Fails to State a Claim Upon Which Relief Can be Granted.

Relying on the pre-*Iqbal* decision in *Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009)

("*Tooley I*"), Jacobrown argues that the Court should simply take at face value the alleged

statements of fact in Jacobrown's complaint because they are made as a matter of "personal

knowledge" and that this is sufficient to state a claim.  *See* Opp'n at 9.[4]  But the Federal Rules of

Civil Procedure require something different.  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Iqbal*, 129 S.Ct. at 1949.  While individual factual allegations (as opposed to legal

conclusions) may be taken as true for purposes of a motion to dismiss, there must be sufficient

---

[3]Judge Lamberth's opinion in *Johnson v. Williams*, No. 06-01453, 2009 WL 302180 (D.D.C. Feb. 6, 2009), which Jacobrown cites, does not appear to have considered the D.C. Circuit's conclusion that the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), bars declaratory relief for past injuries, and therefore should not be relied upon in this instance.

[4]*Tooley I* was *vacated* by the D.C. Circuit.  *See* Per Curiam Order, *Tooley v. Napolitano*, No. 07-5080 (D.C. Cir. July 1, 2009).  The *Tooley I* decision, which reversed a district court's order dismissing a case, was issued after the Supreme Court decided *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) but before the Supreme Court decided *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  In light of *Iqbal*, the government sought a rehearing in the *Tooley* matter.  *See Tooley v. Napolitano*, 586 F.3d 1006 (D.C. Cir. 2009) ("*Tooley II*").  The government argued that the D.C. Circuit's interpretation of *Twombly* was at odds with the Supreme Court's new holding in *Iqbal* and that the underlying case should have been dismissed.  The D.C. Circuit indeed dismissed the case, though on other grounds, stating that "[w]hile we do not reject the government's argument, upon reflection we believe that we should affirm the district court in this case for reasons distinct from but not inconsistent with the holding in *Iqbal*."  *Tooley II*, 586 F.3d at 1007.  Because *Tooley I* has been vacated, it has no precedential value.  *See United States v. Weathers*, 186 F.3d 948, 953-54 n.4 (D.C. Cir. 1999).

facts pled to show that it is more than *possible* but *plausible* that the Defendant is liable for the claimed injuries.  *See id.*  Federal Rule of Civil Procedure 8(a)(2) requires that the Complaint "show" that the plaintiff is entitled to relief.  Jacobrown's Complaint fails this standard because, when all of the well-pleaded factual allegations are taken together, even when treated as true, they fail to "show" his entitlement to relief.

### A.     Jacobrown Fails to Allege a Substantial Burden as Required Under RFRA.

Jacobrown can only state a claim under RFRA if he shows that his religious exercise has been substantially burdened.  The Court is not required to take as true Jacobrown's legal conclusion that his religious exercise is substantially burdened.  *See Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008).  Instead, Jacobrown must plead facts sufficient to show that the government has placed "substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *See id.* at 678.  Accordingly, Jacobrown's Complaint must do two things.  First, it must show that the government has pressured him to violate his religious beliefs.  Second, it must show that the government pressure has been "substantial."  Jacobrown's Complaint fails on both scores.

### 1.     Jacobrown Fails to Allege How Registration Violates his Religious Beliefs.

Jacobrown claims that registration with the draft is inconsistent with two of his beliefs—a fundamental belief in non-violence and a religious requirement that he not participate in systems that are "unjust."  *See* Compl. ¶¶ 1, 21.  Jacobrown makes no substantive response to the government's argument (Mem. in Supp. of Mot. to Dismiss at 17) that his Complaint fails to allege facts sufficient to explain how registration with Selective Service, which provides for alternative service for conscientious objectors, conflicts with his belief in non-violence.

Jacobrown argues that it should be sufficient for him to say "my religious beliefs tell me that I cannot register." *See* Opp'n at 9. But this view of pleading conflicts with *Iqbal*'s requirement that a plaintiff "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949. While it is true that well-pleaded factual allegations should be taken as true, the Court must still "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. A mere possibility is not enough. *See id.* at 1949. Here, the totality of his Complaint does not allege facts sufficient to show the *plausibility* of liability. Jacobrown says that he is opposed to participation in violence, but he does not allege a single fact which suggests that participating in registration would cause him to participate in violence. Indeed, quite to the contrary, he indicates his belief that if there ever were a draft calling forth the citizens to participate in the violence of war, he "would be exempt from military training and service . . . ." Compl. ¶ 13. Where a plaintiff's allegations contradict one another, they become the sort of naked assertions that *Iqbal* bars from being assumed true. *See Acosta Orellana v. Croplife Int'l*, No. 08-1790, 2010 WL 1931689, at *19 (D.D.C. May 13, 2010).

It is for this reason each of the scenarios Jacobrown proposes as demonstrations that the government's view of pleading is incorrect (*see* Opp'n at 8) is off-point. In his first scenario, for example, Jacobrown hypothesizes a law that prohibits wearing a head covering and a religious belief that requires the wearing of head coverings. While it might be sufficient in that case for someone merely to plead that the wearing of head coverings is required by his religion, the hypothetical proves nothing because it assumes that the law actually requires a behavior in conflict with the plaintiff's identified religious beliefs. Here, Jacobrown says the he cannot

11

participate in violence, but does not explain why he cannot register for a hypothetical draft that excludes conscientious objectors from participation in military training or activities.  *Cf. United States v. Schmucker*, 815 F.2d 413, 418 (6th Cir. 1987) (mere registration requirement does not burden religious exercise).[5]

2.     Jacobrown Fails to Demonstrate that the Government has Exerted Substantial Pressure on him to Act Contrary to His Beliefs.

Jacobrown apparently agrees (*see* Opp'n at 9-10) that he may not under RFRA dictate what the government does with his registration information.  *See Kaemmerling*, 553 F.3d at 669; *see also Bowen v. Roy*, 476 U.S. 693 (1986).  Instead, he claims that his objection is to the personal action of filling out a registration card under the "current circumstances."  Jacobrown claims that the government has pressured him to modify his beliefs by informing him that he could be prosecuted, barring him from federal jobs, and barring him from federal financial aid if he does not register despite his objection to the manner in which the Selective Service conducts registration.  *See* Opp'n at 12.

But the pressures he alleges are not sufficient to state a claim as a matter of law.  A religious adherent is pressured to change his beliefs when he or she is forced to choose between his or her religious beliefs and a government benefit.  *See Thomas v. Review Bd. of the Ind.*

---

[5]Jacobrown does not respond at all to the government's argument (Mem. in Supp. of Mot. to Dismiss at 18 n.6) that an alleged religious objection to an unjust system cannot support a claim for relief.  Jacobrown also fails to respond meaningfully to the Defendant's argument that a mere restriction on the time, place or manner of a particular religious exercise cannot constitute a substantial burden.  *See* Mem. in Support of Mot. to Dismiss at 19 (citing *Mahoney v. District of Columbia*, 662 F. Supp. 2d 74, 96-97 (D.D.C. 2009); *Boardley v. U.S. Dep't of the Interior*, 605 F. Supp. 2d 8, 14 (D.D.C. 2009), *aff'd in part*, 2009 WL 3571278 (D. C. Cir. Oct. 19, 2009)).  In response, Plaintiff merely refers the Court to its prior arguments in support of standing.  *See* Opp'n at 9.

*Empl. Sec. Div.*, 450 U.S. 707, 717-18 (1981).  But, as shown above (*supra* Part I.B.2),

Jacobrown's Complaint does not show that he has been has never been deprived of student aid

because it does not allege that he ever applied for and was denied such aid.  Nor has he been

compelled to change his behavior by a credible threat of prosecution.  In short, he has faced no

pressure at all.

**B.      Jacobrown Cannot Overcome the Government's Compelling Interest in a Uniform Selective Service Registration System.**

Jacobrown concedes (Opp'n at 13) that the government has a compelling interest in

national security, and he does not appear to contest the repeated conclusions of successive

presidential administrations that continued Selective Service registration is essential to national

security.  *See* Mem. in Supp. of Mot. to Dismiss at 23.  But Jacobrown argues that, because not

everyone is required to register with Selective Service, it must be the case that he personally can

be exempted from registration without undermining this means to vindicate the government's

compelling interest in having available a ready reserve in case of national emergency.

Jacobrown's argument lacks merit for a number of reasons.

1.      The Court Should Defer to Congress's Judgment with Respect to the Method of Accommodation Chosen in the Military Selective Service Act.

As the Supreme Court recognized in one of the earliest challenges to the Military Selective

Service Act, the courts owe substantial deference to the decisions Congress has made with

respect to Selective Service registration:

> We find these efforts to divorce registration from the military and national
> defense context, with all the deference called for in that context, singularly
> unpersuasive.  *United States v. O'Brien*, 391 U.S. 367 (1968), recognized the
> broad deference due Congress in the selective service area before us in this case.
> Registration is not an end in itself in the civilian world but rather the first step in
> the induction process into the military one, and Congress specifically linked its

> consideration of registration to induction, see, *e.g.*, S. Rep. No. 96-826, pp. 156,
> 160 (1980).  Congressional judgments concerning registration are based on
> judgments concerning military operations and needs . . . and the deference
> unquestionably due the later judgments is necessarily required in assessing the
> former as well.

*Rostker v. Goldberg*, 453 U.S. 57, 68-69 (1981).  Accordingly, the Court should recognize the

validity of Congress's reasons for selecting the method of accommodation embodied in the

Military Selective Service Act and defer to its judgments.

> 2.    The Current Limitations on the Registration Requirement Do Not
>        Undermine Congress' Purpose in Establishing the Registration
>        Requirement.

As noted in the Defendant's Memorandum (at 3-4), there only a few exceptions to the

registration requirement such as certain active and reserve duty members of the military, students

at military academies and certain non-citizens.  *See* 50 U.S.C. app. § 453(a), 456(a)(1).  These

exceptions are not of the sort that undermine the government's compelling interest in

registration.  There is little point in registering people (like current service members and military

academy students) who are already connected to the military and subject to service , since they

would already be known and available to the government in the case of national emergency.[6]

Nor does the fact that registration does not extend to women undermine the government's

interest.  While it is true that women have not been traditionally subject to the registration

requirement and it is also true that women's role in the military has grown, it remains equally

---

[6]Nor is there any reason to register non-citizens like ambassadors and consular officers,
who are also exempt from registration though they are male persons residing within the United
States.  *See* 50 U.S.C. app. § 453(a) (exempting from registration "non-immigrants" defined by 8
U.S.C. § 1101(a)(15)).  And, indeed, it is true that President Carter exempted from registration
those who were incarcerated and institutionalized, but only until they were released from
confinement and could then register.  *See* Proclamation No. 4771, 45 Fed. Reg. 45247 (July 3,
1980).

true that they are ineligible for assignment to many front-line combat roles.  *See Elgin v. United States*, 594 F. Supp. 2d 133, 146 (D. Mass. 2009), *reconsidered on other grounds*, 2010 WL 1131648 (D. Mass. Mar. 11, 2010).  These limitations on the registration requirement are distinct from the exceptions at issue in *O'Centro*, of which Jacobrown makes much in his Opposition. *See* Opp'n at 14-18.  In *O'Centro*, the exemptions to the Comprehensive Drug Abuse Prevention and Control Act that the Supreme Court deemed fatal to the government's argument were *religious* exemptions for groups other than the plaintiff group.  *See Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 433-34 (2006).  In other words, the plaintiffs in that case merely requested an exemption similar to one that had already been granted to other groups.  Moreover, that statute contemplated still other exemptions at the discretion of the Attorney General.  *See id.* at 432-33.  No such religious exemptions from registration are available under the Military Selective Service Act.  Indeed, Congress recognized in adopting the Military Selective Service Act that "the obligations and privileges of serving in the armed forces and the reserve components thereof should be shared generally, in accordance with a system of selection which is fair and just . . ."  50 U.S.C. App. § 451(c).

   3. <u>The Potential For Perceived Unfairness is Sufficient to Justify Congress's Decision in this Instance.</u>

  Jacobrown claims that there is no evidence of the risk of unfairness implicit in providing exemptions for religious objectors.  *See* Opp'n at 17-18.  But he ignores the fact that the Supreme Court has already recognized this very risk, *see Gillette v. United States*, 401 U.S. 437, 460 (1971), and concluded that exemptions to the draft indeed can create "a mood of bitterness and cynicism [that] might corrode the spirit of public service and the values of willing performance of a citizen's duties that are the very heart of free government."  Nor does it

15

advance his cause to argue (Opp'n at 18) that because conscientious objectors would be exempted from actual combat, the perceived unfairness of not registering is comparatively minor.  Congress provided that all males could be subject to duty in times of war.  Conscientious objectors are not exempted from the duty to serve, just the duty to serve in military capacities. *See* 50 U.S.C. app § 456(j).  What Jacobrown now seeks is an exemption from even registering for a *process* that he believes would, if ever invoked, lead only to his service in a non-military role.  The perception that one could simply avoid even this obligation could reasonably be expected to be perceived as unfair.  Given the recognized interest in a fairly-operated Selective Service process, Jacobrown's argument should be rejected.

4.      Providing Jacobrown with a Registration Exemption Undermines the Registration System.

Jacobrown argues that there is no evidence that exempting him specifically from the registration requirement (or providing some other accommodation) would be well known and lead to frustrations for others.[7]  But, as the Third Circuit concluded in *Adams v. CIR*, consideration of what a rule would mean if applied more broadly is an appropriate way to evaluate the government's interest in a RFRA action.  *See* 170 F.3d 173, 175 (3d Cir. 1999).  In that case, the Court concluded that a decision allowing a single individual to choose to not pay a portion of her taxes she deemed inconsistent with her religion would make administratively infeasible the entire process of tax collection.  Though Jacobrown never discusses *Adams* in his opposition, the same logic applies here.  Were the Court to recognize a statutory permission for

_____

[7]A suggestion somewhat belied by the fact that Jacobrown maintains a website dedicated to this case and his attorneys issued a press release presumably intended to draw attention to the filing of his Complaint.  *See* http://www.registerforpeace.org/.

16

those who presently claim to be religious conscientious objectors to simply not register, it woul
make more difficult the Selective Service's effort to maintain an effective registration system in
case of national emergency.  If a person currently claiming to be a conscientious objector does
not register, the Selective Service will have no record of who he is; this will hamper the effort to
determine the validity of his claim at the time of an actual draft.

<u>CONCLUSION</u>

For the forgoing reasons, the Court should grant Defendants' motion and dismiss this action with prejudice.

Respectfully submitted,

TONY WEST
Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director
Civil Division

<u>*/s/Bryan R. Diederich*</u>
Bryan R. Diederich
(MA BBO # 647632, NY Reg. # 4216164)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Room 7330
Washington, D.C. 20530
Tel:  (202) 305-0198
Fax:  (202) 616-8470
E-mail:  bryan.diederich@usdoj.gov
Attorneys for Defendant

Dated:  July 21, 2010

18