# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOBIN DANA JACOBROWN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 09-1420 (RMU) |
| | : | |
| v. | : | Re Document No.: 17 |
| | : | |
| UNITED STATES OF AMERICA *et al.*, | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OPIOPINION

### GRANTING THE DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This matter is before the court on the defendants' motion to dismiss. The plaintiff alleges that the defendants have violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-2000bb-4, by requiring him to register with the Selective Service System ("the Selective Service") without providing a mechanism for him to assert that he is a conscientious objector or maintaining a record of his assertion. The defendants contend that the plaintiff lacks standing because the Selective Service does, in fact, provide such a mechanism, and because his refusal to register has not resulted in any concrete injury. In the alternative, the defendants argue that the complaint fails to state a claim on which relief can be granted because it does not adequately plead that the Selective Service's registration procedures place a substantial burden on the plaintiff's religious exercise.

As discussed below, the Selective Service already provides the registration and recordkeeping measures that, according to the complaint, are needed to satisfy the plaintiff's religious beliefs. Accordingly, the plaintiff has not adequately pled that he is harmed by the registration requirement. As a result, the court dismisses the complaint for lack of standing.

Because, however, the plaintiff's failure to adequately plead standing may have resulted from inadvertent and potentially correctable deficiencies in the drafting of the complaint, the court dismisses the complaint without prejudice and grants the plaintiff leave to file a new complaint that remedies those deficiencies.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. The Selective Service Registration Requirement

The Military Selective Service Act ("MSSA") provides that with very few exceptions, all men between the ages of eighteen and twenty-six must register with the Selective Service in the manner prescribed by the President of the United States and the regulations of the Selective Service. 50 U.S.C. App. § 453(a). The registration requirement is designed to create a ready pool of potential combat troops should Congress be called upon to exercise its power to conscript. *Rostker v. Goldberg*, 453 U.S. 57, 75-76 (1981).

The Selective Service regulations provide a number of different avenues for satisfying the registration requirement. 32 C.F.R. §1615(c). For instance, an individual can register by completing a Selective Service Registration Card, registering online at the Selective Service website or returning the Selective Service reminder mailback card. *Id.* Whatever the method, the registrant is required to provide his name, date of birth, sex, Social Security Number, current mailing address, permanent residence, telephone number and signature. *Id.* § 1615.4(a).

Although the MSSA does not exempt conscientious objectors from the registration requirement, it does provide that conscientious objectors whose opposition to participation in war is founded on their religious beliefs are not subject to training and service in the armed forces. *See* 50 U.S.C. App. § 456(j) ("Nothing contained in this title . . . shall be construed to

require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."). If such an individual is called on to report for induction, he may submit to his local draft board a claim for reclassification as a conscientious objector. 32 C.F.R. § 1633.2(a); *see also id.* §§ 1630.11, 1630.16. The local board may then determine that the individual is a conscientious objector opposed to all service, *id.* § 1630.11, or a conscientious objector opposed to combat training and service, *id.* § 1630.16. If the local board does not classify the individual as a conscientious objector, the individual may appeal that determination to the district appeal board. *Id.* § 1651.1(b). If the registrant is classified as a conscientious objector, he shall either be inducted and assigned to noncombatant service, or, if he is found to be conscientiously opposed to participation in such noncombatant service, be ordered to perform "such civilian work contributing to the maintenance of the national health, safety, or interest as the Director [of the Selective Service] may deem appropriate." 50 U.S.C. App. § 456(j).

Selective Service regulations prohibit an individual from seeking classification as a conscientious objector until the time he is ordered to report for induction. 32 C.F.R. § 1633.3. This policy recognizes that classification claims and determinations must be based on the registrant's status at the time he is ordered to report for induction. *See United States v. Schmucker*, 815 F.2d 413, 418 (6th Cir. 1986) ("[T]he filing of a claim . . . in advance of induction, would only serve to encumber the [Selective Service] with the responsibility for processing claims which may not even prove pertinent to the registrant's requested classification at the time of induction." (quoting 46 Fed. Reg. 56,434, 56,436)).

## B. The Plaintiff's Claims

The plaintiff is a member of the Religious Society of Friends, more commonly known as the Quakers. Compl. ¶ 10. Although he has reached his eighteenth birthday, he has not registered with the Selective Service. *Id.* ¶ 11. According to the plaintiff, his refusal to register results from his religious training and beliefs, on the basis of which he conscientiously opposes participation in war in any form. *Id.* ¶ 12.

Specifically, the plaintiff alleges that his religious beliefs preclude him from registering with the Selective Service because the Selective Service "will not allow [him] to register, or otherwise officially assert, a claim to conscientious objector status in connection with [his] registration for the draft," *id.* ¶ 16, and "will not maintain any record of [his] claim to conscientious objector status in connection with his registration for the draft," *id.* ¶ 19. Thus,

> [b]ecause the Selective Service System will not allow plaintiff to register his claim to conscientious objector status in conjunction with his registration for the draft, and will not maintain any record of his claim to conscientious objector status, plaintiff cannot register with the Selective Service System without violating his sincere religious beliefs – both his fundamental religious belief in nonviolence and his fundamental religious belief in non-submission to a system that is unjust.

*Id.* ¶ 21.

The plaintiff contends that his refusal to register with the Selective Service has exposed him to criminal and civil penalties. *Id.* ¶¶ 22-23. In addition, the plaintiff, who is a college student on leave of absence, alleges that because of his refusal to register, he is barred from obtaining federal student loans or grants. *Id.* ¶ 24. The plaintiff further asserts that his refusal to register bars him from obtaining certain types of federal employment and prevents him from obtaining benefits under state law. *Id.* ¶¶ 25-26.

## C. Procedural History

In April 2007, the plaintiff advised the Selective Service that his religious beliefs – specifically, his opposition to violence – prevented him from registering. Def.'s Mot., Decl. of Rudy Sanchez ("Sanchez Decl."), Ex. A.[1] Over the following months, the plaintiff corresponded with the Selective Service regarding the plaintiff's refusal to register. *Id.*, Exs. B-F. In a letter dated June 11, 2008, the Selective Service advised the plaintiff that he could simply write on his registration form that he is a conscientious objector. *Id.*, Ex. E. The plaintiff, through counsel, rejected this proposal, stating that this manner of registration was insufficient because "it [would] not recognize [his] registration as a conscientious objector." *Id.*, Ex. F.

In July 2009, the plaintiff commenced this action against the Director of the Selective Service and the United States, alleging that the MSSA's registration requirements violate the RFRA by imposing a substantial burden on the exercise of his religious beliefs. *See generally* Compl. He seeks a declaratory judgment that "the registration requirement of the [MSSA] imposes a substantial burden on the plaintiff's exercise of religion" and that

> unless . . . the defendants allow the plaintiff to register his claim to conscientious objector status at the time he registers for the draft, or agree to maintain a record of plaintiff's claim to conscientious objector status in connection with his registration for the draft, plaintiff is exempt from the registration requirement of the [MSSA].

*Id.* at 13-14.

At the parties' request, the court repeatedly stayed the defendants' deadline for responding to the complaint as the parties attempted to resolve the matter without the court's assistance. Ultimately, however, the parties were unable to resolve the matter and the court granted the parties' request to impose deadlines to bring this litigation to a close. Minute Order (Apr. 28, 2010).

---

[1] Rudy Sanchez serves as General Counsel for the Selective Service. Sanchez Decl. ¶ 1.

Pursuant to that scheduling order, the defendants filed their motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). *See generally* Defs.' Mot. The defendants contend that the plaintiff lacks standing to assert his RFRA claim because the Selective Service already provides a mechanism for asserting and recording conscientious objector claims. *Id.* at 8-11. The defendants contend that the plaintiff also lacks standing because he has not pled the existence of an injury in fact. *Id.* at 11-13. Furthermore, the defendants argue that even if the court had jurisdiction over the plaintiff's claim, the complaint would nonetheless be subject to dismissal because it fails to state a claim for which relief can be granted. *Id.* at 13-27. The defendants' motion is now ripe for adjudication, and the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the

burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

## B. Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. art. III, § 2, cl. 1. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Consequently, "a showing of standing 'is an essential and unchanging' predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Lujan*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. Envtl. Prot.*

7

*Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice. *Id.* On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* at 899 (citing FED. R. CIV. P. 56) (internal quotation marks omitted); *accord Fla. Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Lujan*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* This Circuit has made clear that no standing exists if the plaintiff's allegations are "purely speculative [which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001) (citing *Advanced Mgmt. Tech. Inc. v. Fed. Aviation Admin.*, 211 F.3d 633, 637 (D.C. Cir. 2000)). Nor does standing exist where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect [the] alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

## C. The Court Lacks Jurisdiction Over the Plaintiff's Claim Because the Plaintiff Lacks Standing

The defendants argue that the plaintiff lacks standing because the Selective Service registration procedures already provide for the registration and recordkeeping measures sought in the complaint. Defs.' Mot. at 8-11. Specifically, the defendants assert that an individual may assert his conscientious objector status at the time of registration by writing in the margin of his registration card that he is a conscientious objector, a practice that has been recommended by peace churches and conscientious objector organizations. *Id.* at 9-10; Sanchez Decl., Ex. E at 2. The registration cards, in turn, are recorded on microfiche copies, which are maintained by the Selective Service until the registrant reaches eighty-five years old. *Id.* at 10. Accordingly, the defendants contend that because the Selective Service already provides the registration and recordkeeping measures the plaintiff contends would satisfy his religious beliefs, he has not adequately pled that the registration requirement injures him in any cognizable way. *Id.* at 8-11. In the absence of such an injury, the defendants argue, the plaintiff lacks standing.

The plaintiff responds that the Selective Service's current procedures do not encompass the relief sought in the complaint. Pl.'s Opp'n at 2-3. The plaintiff contends that his religious beliefs require something more than permitting him to "scribble whatever words he wishes in the margin of his registration form." *Id.* at 3. Rather, the plaintiff asserts that his religious beliefs require that he be permitted to "officially assert" his conscientious objector status. *Id.* Likewise, the plaintiff contends that his religious beliefs can only be satisfied if the defendants maintain an "official record" of his conscientious objector claim and that a "microfiche copy . . . buried somewhere in the archives far from the Selective Service System's official registration database, is not an official record of an official claim." *Id.*

The court notes that the plaintiff alleges in his complaint that his religious beliefs would

permit him to register if the Selective Service "would allow him to register, or otherwise officially assert, his claim to conscientious objector status" or "would maintain a record of his claim to conscientious objector status in connection with his registration for the draft." [2] Compl. ¶¶ 15, 17. Because the Selective Service "will not allow registrants to register, or otherwise officially assert, a claim to conscientious objector status in connection with their registration for the draft" and "will not maintain any record of a registrant's claim to conscientious objector status in connection with his registration for the draft," the plaintiff's religious beliefs prevent him from registering. *Id.* ¶¶ 16, 18.

The record clearly indicates, however, that the Selective Service already provides procedures for both asserting conscientious objector status and maintaining a record of that assertion. The plaintiff does not dispute that an individual may write on his registration card that he is a conscientious objector. *See* Pl.'s Opp'n at 2-3; *see also* Defs.' Mot. at 9-10; Sanchez Decl., Ex. E at 2. If that assertion is made on the registration card, it will be recorded on a microfiche copy which the Selective Service will maintain in its records until the registrant reaches eighty-five years of age. 65 Fed. Reg. 57,215, 57,221-22; Sanchez Decl., Ex. G. Thus, the plaintiff is simply incorrect when he asserts in his complaint that the Selective Service does

---

[2]  The complaint makes clear that the plaintiff's religious requirements would be satisfied by either a mechanism for asserting conscientious objector status or by a system for maintaining a record of such an assertion. The complaint states that the plaintiff "has requested the Selective Service System to allow him to register his claim to conscientious objector status at the time he registers for the draft. *Alternatively*, plaintiff has requested the Selective Service System to maintain a record of his claim to conscientious objector status in connection with his registration for the draft." Compl. ¶ 19 (emphasis added). Likewise, the complaint requests the entry of a declaratory judgment stating that

> unless and until the defendants allow plaintiff to register his claim to conscientious objector status at the time he registers for the draft, *or* agree to maintain a record of plaintiff's claim to conscientious objector status in connection with his registration for the draft, plaintiff is exempt from the registration requirement of the [MSSA].

*Id.* at 14 (emphasis added).

not maintain any record of a registrant's claim to conscientious objector status in connection with his registration. *See* Compl. ¶ 18.

The plaintiff asserts that these measures do not suffice because his religious beliefs require an *official* assertion of his conscientious objector status recorded in an *official* record. Pl.'s Opp'n at 2-3. Yet the plaintiff has been expressly authorized by an official of the Selective Service to make an annotation regarding his claim to conscientious objector status on the face of his registration card. Sanchez Decl., Ex. E at 2. The plaintiff does not explain why taking advantage of this procedure would not constitute an officially sanctioned assertion of conscientious objector status.[3] *See generally* Compl.; Pl.'s Opp'n. Moreover, the microfiche copies of the physical registration cards plainly comprise official agency records maintained by the Selective Service. 65 Fed. Reg. 57,215, 57,221-22. Indeed, as the defendants point out, these microfiche records would be treated as "agency records" for purposes of federal records statutes.[4] *See, e.g.*, *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989) (observing that "agency records" for purposes of the Freedom of Information Act include all records created or obtained by the agency in the agency's control at the time of the request).

Thus, the Selective Service already provides the registration and recordkeeping measures

---

[3] Indeed, in its correspondence with the plaintiff, the Selective Service has expressly acknowledged that the plaintiff's "refusal to register is based on [his] claim of being a conscientious objector to all military service." Sanchez Decl., Ex. C at 1. The Selective Service maintains a record of its letters in its correspondence file. 65 Fed. Reg. at 57,215. The fact that the Selective Service has expressly acknowledged the plaintiff's claim to conscientious objector status in an official correspondence that it maintains on file further undermines the plaintiff's assertion that he is injured by the Selective Service's registration policies.

[4] Although the plaintiff suggests that these microfiche records are not official records because they are "buried somewhere in the archives far from the Selective Service System's official registration database," Pl.'s Opp'n at 3, he does not explain how the location of the records affects their status as official records, *see id.* At any rate, as the defendants point out, the registration database and the microfiche records of registration cards are maintained at the same facility in Illinois, *see* 65 Fed. Reg. at 57,216; *id.* at 57,222.

the absence of which, according to the complaint, gives rise to his injury. Accordingly, the court concludes that the plaintiff lacks standing and dismisses the complaint for lack of jurisdiction.

In dismissing the complaint, however, the court notes that the plaintiff's failure to adequately plead standing may have resulted from a lack of clarity in the complaint rather than a lack of awareness about the Selective Service's registration and recordkeeping measures.[5] The plaintiff, after all, opposes the dismissal of the complaint, indicating that the Selective Service's registration and recordkeeping measures may not entirely address his religious concerns. *See generally* Pl.'s Opp'n. Accordingly, the court grants the plaintiff leave to file a new complaint remedying the deficiencies in the original complaint.[6]

---

[5] It is worth noting, however, that at the time he commenced this suit, the plaintiff reportedly stated to news media that the Selective Service's recordkeeping measures were inadequate because the registration cards are discarded after submission, making the act of writing "conscientious objector" on the card pointless. Del Wilbur, *Selective Service is Sued by Quaker*, WASH. POST (July 30, 2009). As previously discussed, while the cards themselves are discarded, a copy of the card is maintained by the Selective Service until the registrant reaches eighty-five years of age. 65 Fed. Reg. 57,215, 57,221-22.

[6] Although it would be improper for the court to rule on the merits of the plaintiff's claim, having dismissed the complaint for lack of standing, the court notes that there is a significant question as to whether the complaint, as drafted, contains sufficient factual allegations to survive a Rule 12(b)(6) motion to dismiss. To succeed on his RFRA claim, the plaintiff must show, as a threshold matter, that the Selective Service's policies impose a substantial burden on his exercise of religion. 42 U.S.C. § 2000bb-1. Yet the only religious beliefs cited in the complaint are the plaintiff's belief in nonviolence and his belief in "non-submission to a system that is unjust." *See* Compl. ¶¶ 21, 32-33. It is not clear how the registration requirement implicates the plaintiff's belief in nonviolence, given that individuals who demonstrate that they are conscientious objectors upon induction are not required to submit to military training or service. 50 U.S.C. App. § 456(j). Nor does the complaint contain any indication as to how the Selective Service's registration system is "unjust." *See generally* Compl. It is far from clear that these bare allegations would survive a Rule 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (internal quotation marks omitted).

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss and dismisses the plaintiff's complaint without prejudice.  An Order consistent with this Memorandum Opinion is separately and contemporaneously filed this 22nd day of February, 2011.

                                                RICARDO M. URBINA
                                                United States District Judge